# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

DAVID I. BAUMGARTNER,    )
                         )
            Plaintiff,   )    Case No. 2:15-cv-01912-GWF
                         )
vs.                      )    **ORDER**
                         )
NANCY A. BERRYHILL,      )
Commissioner of Social Security,  )
                         )
            Defendant.   )    Motion for Reversal and/or Remand (#15)
                         )    Cross-Motion to Affirm (#21)
_____)

This matter is before the Court on Plaintiff David Baumgartner's Complaint for Review of Final

Decision of the Commissioner of Social Security (ECF No. 1), filed October 6, 2015. The Acting

Commissioner filed her Answer (ECF No. 7) on January 11, 2016, as was a certified copy of the

Administrative Record (the "A.R."). (*See* ECF No. 8). Plaintiff filed his Motion for Reversal and/or

Remand (ECF No. 15) on April 11, 2016. The Acting Commissioner filed her Cross-Motion to Affirm

and Opposition to Plaintiff's Motion for Reversal and/or Remand (ECF No. 21) on June 30, 2016.

Plaintiff filed a Reply (ECF No. 22) on July 20, 2016. Pursuant to the written consent of the parties, on

July 7, 2017 this case was referred to the undersigned United States Magistrate Judge to conduct all

proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal

Rule of Civil Procedure 73. *See Reference Order* (ECF No. 23).

## BACKGROUND

### A.    Procedural History.

In January 2006, Plaintiff was found disabled as of September 16, 2005. AR 73, 84. On June

30, 2011, however, Plaintiff was found to be no longer disabled as of June 1, 2011. AR 75-76.

Plaintiff appealed the Social Security Administration's ("SSA") determination that he was no longer

disabled on September 6, 2011. AR 77. On May 31, 2012, a Disability Hearing Officer denied

Plaintiff's appeal finding that he was able to return to work and affirmed the June 2011 cessation of benefits. AR 78. Thereafter, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). AR 90. Plaintiff appeared and testified at a hearing on August 14, 2013. AR 42-62. Vocational expert Bernard Preston also testified at the hearing. The ALJ determined that Plaintiff was not disabled from the date of cessation of benefits—June 2011. AR 17-27. Plaintiff appealed the decision of the ALJ to the Appeals Council on April 9, 2014. AR 9-13. The Appeals Council denied Plaintiff's request for review on August 7, 2015. AR 3-8. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

### B.     Factual Background.

Plaintiff David Baumgartner was born on March 31, 1980. AR 183. He is 5'10" tall and weighed 165 pounds in July 2010. AR 167. Plaintiff obtained his GED when he was 16 and was three months away from obtaining his Associates Degree in Culinary Arts at the time of the May 2005 incident. AR 47. Plaintiff is married and has a daughter who was five years old at the time of the August 14, 2013 hearing. AR 47-48.

### 1. Plaintiff's Disability/Work History Reports and Hearing Testimony

Plaintiff submitted a continuing disability report on July 20, 2010. He listed the following as his disabling illnesses, injuries or conditions: left eye damage, light sensitivity, occipital neuralgia, spinal injury at C6-C7 that affects his ability to use his arms and stand for extended periods of time, a brain tumor (pituitary macroadenoma), and post traumatic stress disorder from an incident in May 2005. AR 168. Plaintiff claimed that his spinal injury had worsened since the date of his last medical disability decision and that he needed surgery. Plaintiff was seen by Drs. Garber and Kaplan for his spinal injury and brain tumor and took the following medication: fentanyl patch, provingil, roxicodene, fleceril, and compazine. AR 169, 172. Plaintiff stated that during a typical day he would wake up, take a shower, bathe and feed his daughter. If it was not too bright out and if he felt alright, he would take his daughter to the park for about an hour. AR 177. Plaintiff usually spent his days at home in pain due to his pounding headaches, constant nerve pain and nausea. Plaintiff reported difficulty dressing, bathing, caring for his hair, doing chores, driving, shopping, walking, standing, lifting objects, using his arms, sitting, seeing, concentrating, remembering and getting along with people. AR 178-179. He did not

have difficulty understanding/following directions or completing tasks. AR 179.

Plaintiff submitted a second disability report on September 6, 2011. Plaintiff reported that he had spinal surgery on April 1, 2010 that did not decrease his back pain. AR 187. He also stated that all of his other conditions had not improved, and he now had new injuries to report. AR 187-188. Since his last report, Plaintiff visited Dr. Lanskowski at Centennial Pain and Spine center for pain management and nerve blocks. AR 188. He also saw Dr. Kaplan at Western Regional Center to address his spinal injury and brain tumor. AR 189. Plaintiff was taking fentanyl, oxycodone, provingil, prochlorperazine and flexiril. AR 190. Due to his left eye sensitivity and the resulting nausea, Plaintiff could not eat during the day. AR 191. He could not concentrate or perform every day chores due to nerve pain. Plaintiff stated that his medications made him nauseous, constipated and miserable. AR 191. Since his last disability report, Plaintiff had trouble sleeping and waking, had trouble eating, and his severe headaches made it difficult to complete daily tasks. AR 192.

Plaintiff completed a third disability report on July 9, 2012. An MRI taken after Plaintiff's last report showed an increased growth of his pituitary tumor. Plaintiff had increased irritability, increased panic attacks and decreased cognitive abilities. AR 202. Plaintiff reported that his spine was deteriorating due to pain injections following his April 2010 surgery. AR 203. He had seen Dr. Jeremy Lipshutz for monthly pain management as well as Dr. Jonathan McKinnon for nerve induction testing. AR 203-204. Plaintiff reported taking fentanyl, oxycodene, flexiril, provingil, ativan and compazine. AR 205. Plaintiff reiterated that he was light sensitive and could not eat because of nausea. AR 206. He also reported not being able to socialize or sleep and had panic attacks when in a group setting. He generally had difficulty with simple daily living tasks and would isolate himself. AR 206-207.

In a fourth disability report dated August 1, 2012, Plaintiff reported that his conditions had not improved but had worsened. He still suffered from panic attacks as a result of post traumatic stress disorder, headaches, nausea, light sensitivity and a pituitary tumor. AR 210. He had seen Dr. Jeremy Lipschutz for pain management, headaches and nerve blocks and visited Western Regional Brain and Spine to address his spine pain and brain tumor. AR 211-212. Plaintiff reported taking fentanyl, roxicodene, provingil, compazine and flexiril. AR 213. Plaintiff could not eat due to nausea and could not sleep or concentrate. AR 214.

Plaintiff testified at a hearing before the ALJ on August 14, 2013. AR 47-58. He stated that he obtained his GED when he was 16 and was three months away from obtaining his associates degree in culinary arts when the incident occurred in May 2005. AR 47. After the May 2005 incident, Plaintiff spent most of his time on the couch or in bed until the doctors found a medication to help him. In addition, Plaintiff's wife gave birth to his child, who was 5 years old at the time of the hearing. AR 47. Plaintiff testified that he had taken care of his daughter since she was born with the assistance of his wife and mother. AR 48. Plaintiff still had a driver's license but stated that he did not drive often because he became too nauseous from the medication and the light during the day was too bright for him. His wife usually drove. AR 48. Plaintiff testified that he did not do much cooking or cleaning. Nor did he often go to the grocery store. AR 49. He had difficulty lifting, moving and pushing a shopping cart. He could lift 20 pounds but not very often. He mainly just lifted the groceries from the car to the house to help his wife. AR 49. Plaintiff also testified that his medications caused a lot of side effects. His nausea was worse and it caused lower intestinal problems such as constipation and diarrhea. AR 49.

Upon examination by his attorney, Plaintiff testified that he had trouble reading because of the incident where he was stabbed in the eye. Specifically, he could not track from sentence to sentence. AR 50. Plaintiff stated that the doctors in 2012 were unable to place a neural stimulator in his brain because of a pituitary tumor and the positioning of his nerves. AR 51. However, at the time of the hearing (August 2013), Plaintiff testified that the doctors believed they could place a neural stimulator because the FDA had approved a new type that would be compatible with Plaintiff's condition. Plaintiff suffered from continual headaches that originated in his occipital nerve, known as occipital neuralgia. AR 51. Plaintiff also testified that he suffered from panic attacks in his sleep because of the May 2005 incident. Plaintiff testified that all of his conditions had worsened from the last disability finding. AR 52.

Plaintiff testified that his mother would come over to help take care of his daughter if there was an emergency or when he was unable to get out of bed. AR 52-53. Plaintiff's mother also cared for his daughter every Friday. AR 53. Plaintiff regularly napped when his wife returned home from work. He had difficultly taking a bath or shower, and his wife helped him trim his beard. AR 53-54. Plaintiff

testified that his medication dosages increased due to an increase in pain and that he experienced panic attacks ranging from twice a month to once a week or more. AR 54. During a panic attack, Plaintiff would awake from sleep with a "burning feeling in [his] chest and acid into [his]lungs." AR 55. He would then have a hard time breathing and would end up vomiting. This lasted anywhere between five to 10 minutes. AR 55. Plaintiff also testified that his medication helped him stay alert but he still had memory problems, especially with his short-term memory. His memory problems had also intensified over the prior two years. AR 56.

### 2. Vocational Expert's Testimony

Vocational Expert ("VE") Bernard Preston testified at the August 14, 2013 hearing. After establishing Plaintiff's prior work history as a chef (medium work) and short order cook (light work), AR 59, the ALJ asked the VE the following hypothetical question:

> [L]et's assume you had a hypothetical man who was a younger individual with a pituitary adenoma, decreased vision in the left eye, was post cervical spine laminectomy syndrome with a history of migraines, and cervical genic headaches. And if we were to assume these impairments would result in limiting that hypothetical man to light work as defined by the DOT and the Social Security regulations with climbing of stairs or ramps limited to frequent. No climbing of ladders, ropes, or scaffolds. Frequent balancing, stooping, kneeling, crouching, no crawling. Occasional overhead reaching and no exposure to hazards such as heights or dangerous moving machinery. Well, if those were the limitations would that hypothetical man be able to do any of Mr. Baumgartner's past work?

AR 59.

The VE responded that the hypothetical man would be able to work as a short order cook, but the chef position would be eliminated. AR 59-60. The ALJ then asked if the hypothetical man would be able to perform any other jobs that exist in the national economy. The VE stated that the hypothetical man would be able to perform the following jobs: usher (light work, 86,527 jobs nationally), locker room attendant (light work, 21,347 jobs nationally), and furniture rental clerk (light work, 112,759 jobs nationally). AR 60. The ALJ also asked if the hypothetical man would be competitively employable at these jobs if he were to miss work more than two days a week. The VE responded that he would not. AR 61.

Plaintiff's counsel asked whether the hypothetical man would be able to maintain employment if he were unable to work for eight hours a day under artificial light. The VE testified that he would not

because less than eight hours does not constitute competitive employment. AR 61. Plaintiff's counsel

also asked if these jobs would be eliminated or reduced if the hypothetical man were unable to work for

approximately 25 percent of two work days due to diarrhea. The VE responded that the jobs would be

eliminated. AR 61. Lastly, Plaintiff's counsel asked if these jobs would be eliminated if the

hypothetical man had difficulty reading and was unable to read anything longer than a couple of words.

The VE responded that the jobs would not be eliminated based on that limitation. AR 62.

### 3. Medical Records and Reports:

Beginning in August 2006, Plaintiff was seen by Stuart S. Kaplan, M.D. at Western Regional

Brain Center. AR 384-394. Dr. Kaplan initially observed that Plaintiff had a pituitary tumor that was

in close proximity to his optic nerve and chiasm, but there was no evidence of compression. AR 394.

Plaintiff presented to Dr. Kaplan on August 5, 2011. Plaintiff complained of headaches and Dr. Kaplan

noted that Plaintiff was "not very interested in occipital nerve stimulator" because of his pituitary

tumor. AR 385. Plaintiff's physical examination was normal and Dr. Kaplan recommended that

Plaintiff might benefit from an occipital neurectomy. In a follow-up report on September 14, 2011, Dr.

Kaplan found that an MRI of Plaintiff's brain showed that his pituitary tumor had not changed. AR

384. Based on Plaintiff's complaints of depression, Dr. Kaplan recommended primary care and

psychiatric physicians. *See also,* AR 1131.

Plaintiff was also treated at Centennial Medical Group from 2006 through September 2011. AR

395-956. Plaintiff was primarily seen for headaches, neck and back pain, insomnia, and nausea. He

was treated with medications as well as trigger point injections. *See e.g.,* AR 926-927. On June 14,

2011, it was noted that Plaintiff exhibited a good affect and that there were no signs of aberrant

behavior. AR 933. Plaintiff also reported being able to perform the activities of daily living with his

current medication regimen and denied suicidal behavior. These findings were the same through

September 2011. AR 920-931. Plaintiff presented to Centennial Medical Group for reevaluation in

November 2011, which continued through February 2012. AR 988-1002. Plaintiff's chief complaints

were pain in the left arm, head, neck, and back. Plaintiff was given medication refill prescriptions for

his pain and was advised to obtain a repeat MRI of his c-spine.

Dr. Mehdi Ansarinia submitted a progress note regarding Plaintiff on November 16, 2011. AR

1005-1008. Dr. Ansarinia found that Plaintiff suffered from chronic daily headaches with migrainous features, cervical facet syndrome, cervicogenic headaches, possible medication overuse headaches, spasms in trapezeii, post-traumatic heachaches, migraine headaches without aura, pituitary microadenoma, a dysmorphic left pupil, hearing loss in the right ear, cervicalgia and noted daily opiod use. AR 1007. Dr. Ansarinia also noted that Plaintiff's Beck Depression Inventory score was suggestive of severe depressive symptomatology. AR 1006. Dr. Ansarinia suggested that Plaintiff obtain an EKG to help determine what was causing Plaintiff's headaches and advised Plaintiff to start taking timolol and use Treximet and Maxalt for breakthrough headaches. AR 1007.

A Psychiatric Review Technique was completed by H. Mark Evans, Ph.D. on December 1, 2011. This assessment was made from September 16, 2005 through the date of the report. AR 957. Dr. Evans found that Plaintiff suffered from depression—a medically determinable impairment. AR 96. Dr. Evans also noted that there was insufficient evidence to suggest that Plaintiff's depression would restrict his activities of daily living, make it difficult to maintain social functioning, concentration or persistence or cause episodes of decompensation. AR 967.

Dr. Jon Arnow prepared a Physical Residual Functional Capacity Assessment of Plaintiff on December 2, 2011. AR 975-982. Dr. Arnow found that Plaintiff was capable of occasionally lifting 20 pounds; frequently lifting 10 pounds; could stand/walk for about 6 hours in an 8-hour work day; could sit for about 6 hours in an 8-hour work day; and did not have any pushing/pulling limitations. AR 976. He found that Plaintiff could frequently balance, stoop, kneel, crouch and climb ramps/stairs and could occasionally crawl and climb ladders/ropes/scaffolds. AR 977. Dr. Arnow limited Plaintiff to only occasional overhead reaching because of his spinal surgery and found that Plaintiff's depth perception and field of vision were limited in his left eye. AR 978. Dr. Arnow noted that Plaintiff retained the ability to avoid ordinary hazards, work with large objects and retained the ability to read print and work with small objects. AR 978. Overall, Dr. Arnow found that Plaintiff had the following three severe medically determinable impairments ("MDI"): "post laminectomy syndrome s/p CS ACDF with pain without myelopathy or neuropathy," migraine headaches that are manageable with medication, and visual loss in the left eye due to trauma. AR 982. Dr. Arnow also found that Plaintiff had a non-severe impairment of a pituitary adenoma. Based on his assessment and Plaintiff's MDIs, Dr. Arnow opined

1 | that Plaintiff could perform light work. AR 982.

2 |     Dr. Simon J. Farrow performed a consultative examination of Plaintiff and submitted a medical

3 | source statement in October 2013. Dr. Farrow found that Plaintiff could continuously lift and carry up

4 | to 10 pounds; frequently lift or carry 11 to 20 pounds; occasionally lift or carry 21 to 50 pounds; but

5 | could never lift 51 to 100 pounds. AR 1138. He found that Plaintiff could sit for seven hours, stand for

6 | six hours and walk for five hours in an 8-hour work day. AR 1139. Dr. Farrow noted Plaintiff's visual

7 | impairment, but found that Plaintiff could still avoid ordinary hazards, read small print and a computer

8 | screen and determine differences in shape and color of small objects. AR 1141. During Dr. Farrow's

9 | examination, Plaintiff seemed quite depressed but his cognitive function appeared normal. AR 1145.

10 | Dr. Farrow concluded that "[d]epending on assessment of the claimant's reported chronic, severe pain

11 | he would be capable of moderate work in an ordinary way or not able to work at all. He does appear to

12 | have a severe, chronic pain syndrome." AR 1145.

13 |     Dr. Richard Yao submitted a medical source statement in November 2013. Dr. Yao found that

14 | Plaintiff's impairments mildly affected his ability to make judgments on simple work-related decisions;

15 | moderately affected his ability to understand and remember complex instructions, carry out complex

16 | instructions and ability to make judgments on complex work-related decisions; but did not affect his

17 | ability to understand and remember or carry out simple instructions. AR 1148. Dr. Yao also found that

18 | Plaintiff's ability to interact appropriately with supervision, co-workers, and the public, as well as

19 | respond to changes in the routine work setting, were not affected by his impairments. AR 1149.

20 |     Dr. Yao also issued a consultative psychological report on December 2, 2013. AR 1152-1158.

21 | During the evaluation, Plaintiff represented that on a scale of 1-10, with 10 being severely depressed

22 | with suicidal ideation, he rated his level of depression as an 8. AR 1153. Plaintiff continued to

23 | experience panic attacks five days a week as a result of the 2005 incident. Plaintiff denied having had

24 | any formal mental health treatment history, but noted that he was evaluated at Harmony Healthcare in

25 | 2012 as a result of his depressive symptoms, and was diagnosed with a pain disorder. AR 1152-1153.

26 | Dr. Yao stated that based on Plaintiff's complaints of depression and PTSD, it was "surprising" that he

27 | did not receive formal mental health treatment. Dr. Yao noted that there were Medicaid providers who

28 | could have provided mental health treatment to Plaintiff. AR 1157. Dr. Yao found that Plaintiff's

"performance on the mental status examination indicated that his intellectual abilities can be estimated to be in the average range of intellectual functioning." AR 1157.

### C. ALJ's Decision.

On January 20, 2006, the Social Security Administration concluded that Plaintiff had the following medically determinable impairments: impaired vision in the left eye; pituitary macoadenoma; and mood disorder/depression. AR 19. In his February 12, 2014 decision, the ALJ determined that Plaintiff's medically determinable impairments present at the time of the "comparison point decision"—January 20, 2006—had decreased in medical severity as of June 1, 2011, and that Plaintiff had the residual functional capacity to perform light work as defined in the Dictionary of Occupational Titles and the Social Security Regulations. AR 24. In reaching this conclusion, the ALJ stated that as of June 1, 2011 Plaintiff suffered from the following severe medically determinable impairments: impaired vision in the left eye; chronic pain syndrome post cervical spine fusion surgery; history of migraines/cervicogenic headache; and mood disorder/depression. AR 20. He found, however, that these impairments did not met or medically equal the severity of any condition listed in Appendix 1, Subpart P, of 20 C.R.F. §§ 404.1520(d), 404.1525 and 404.1526. AR 20.

The ALJ summarized the medical evidence contained in the record that supported a finding that medical improvement had occurred as of June 1, 2011. The ALJ discussed the consultative neurological examination performed by Dr. Farrow on October 15, 2013. Plaintiff told Dr. Farrow that he had headaches associated with nausea and light sensitivity. He also reported that he was chronically fatigued without energy and was depressed. AR 21. The ALJ stated that Dr. Farrow noted that apart from the blepharospasm, Plaintiff's facial movements were unremarkable. Plaintiff's cognitive functioning was normal and that he had no prominent focal abnormality of production or understanding of speech, short or long term memory, body image or somatic representation, spatial orientation, social awareness and interaction or executive function. There was no observation of perserveration, distractibility, delusional ideas, hallucinations or other breakdown of thought patterns. AR 21. The ALJ pointed out that Dr. Farrow opined that "depending on the assessment of the claimant's reported chronic severe pain he would 'either be capable of moderate work in an ordinary way or not able to work at all.'" AR 21. The ALJ stated that contrary to supporting the conclusion that Plaintiff was

1    unable to work, Dr. Farrow's comments "emphasized the highly subjective nature of the claimant's

2    allegations of symptoms and limitation," which th ALJ did not find to be entirely credible.  AR 21.

3           Next, the ALJ discussed the consultative psychological evaluation performed by Richard Yao,

4    Ph.D. on November 14, 2013.  AR 22.  Plaintiff reported chronic migraine headaches as a result of the

5    injury from 2005.  The ALJ noted that Dr. Yao opined that Plaintiff had "moderate limitations" in his

6    ability to understand and remember complex instructions, in his ability to carry out complex

7    instructions and in his ability to make judgments on complex work-related decisions.  AR 22.  Dr. Yao

8    also found that Plaintiff's ability to interact appropriately with supervision, co-workers, and the public,

9    as well as respond to changes in the work setting was not affected by his impairments.

10          The ALJ also addressed the opinions of Plaintiff's treating physician, Jerry M. Lipshutz, M.D.

11   Dr. Lipshutz opined that Plaintiff's injuries precluded him from any gainful employment and found that

12   a change in Plaintiff's disability status and loss of benefits was unlawful and unreasonable.  AR 22.

13   The ALJ gave no weight to Dr. Lipshutz's opinion.  He found that Dr. Lipshutz failed to provide

14   specific limitations for Plaintiff to support his opinion; that Dr. Lipshutz's opinion was inconsistent

15   with the treating records and not supported by objective medical findings; and that Dr. Lipshutz's

16   opinion addressed the ultimate issue of disability, which is reserved for the Commissioner.  AR 22.

17          Finally, the ALJ summarized Plaintiff's subjective complaints.  AR 22-23.  The ALJ found that

18   Plaintiff's statements regarding the severity of his mental limitations and his inability to work were not

19   credible.  He found that Plaintiff's statements regarding the severity of his symptoms were not

20   supported by the record as a whole, and that there was an overall lack of substantial treatment which

21   placed Plaintiff's allegations in doubt.  AR 23.  The ALJ noted that Plaintiff had taken care of his

22   daughter since her birth which suggested a much higher level of functioning then he admitted to.  The

23   ALJ stated that Plaintiff may have lacked motivation to return to work because his worker's

24   compensation claim had only recently settled.  He also stated that Plaintiff's work history showed only

25   a marginal connection to the work force.  Plaintiff did not pursue formal mental health treatment

26   "which one would expect if he were experiencing debilitating PTSD symptoms and panic attacks on a

27   daily basis."  AR 23.  The ALJ also noted that Plaintiff's headaches appeared to be aggravated by

28   medication overdose.  AR 25.  Based on these findings, the ALJ concluded:

> [A]s of June 1, 2011, the Claimant had the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b) except for frequent
> climbing of ramps and stairs, no climbing ladders, ropes, or scaffolds;
> frequent balancing, stooping, kneeling, crouching, but no crawling
> occasional overhead reaching and no exposure to hazards such as heights
> or dangerous moving machinery.

AR 24.

The ALJ explained that he did not consider the limiting effects of the impairment that developed after the comparison pont decision (CPD) in arriving at the foregoing residual functional capacity assessment. Rather, he simply reviewed the basis for which Plaintiff was initially found disabled. AR 24. Based on his assessment of Plaintiff's residual functional capacity assessment, the ALJ stated that he could perform his past relevant work as a short order cook. AR 25. Alternatively, the ALJ found that that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform; specifically Plaintiff was able to work as an usher, locker room attendant, or furniture rental clerk. AR 26.

## DISCUSSION

### I. Standard of Review.

A federal court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). The Ninth Circuit has defined substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal. 2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001). The Court must look to the record as a whole and consider both adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Where the factual findings of the Commissioner of Social Security are supported by substantial evidence, the District Court must accept them as conclusive. 42 U.S.C. § 405(g). Hence, where the evidence may be open to more than one rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). *See also Vasquez v.*

*Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court may not substitute its judgment for that of the ALJ if the evidence can reasonably support reversal or affirmation of the ALJ's decision. *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings. *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981) (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)). In order to enable the court to properly determine whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the District Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In the alternative, the District Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

## II. Disability Evaluation Process

To qualify for disability benefits under the Social Security Act, a claimant must show that:

    (a)     he/she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that twelve months; and

    (b)     the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see also* 42 U.S.C. § 423(d)(2)(A).

The claimant has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir 1995), *cert. denied*, 517 U.S. 1122 (1996). If the claimant establishes an inability to perform his or her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

III.     **Analysis of the Plaintiff's Alleged Disability**

Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). At the first step, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* § 416.920(b). If so, the claimant is not considered disabled. *Id.* § 404.1520(b). Second, the Commissioner determines whether the claimant's impairment is severe. *Id.* § 416.920(c). If the impairment is not severe, the claimant is not considered disabled. *Id*. § 404.152(c). Third, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1. The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment. *Id.* § 404.1520(d). If a listed impairment is not met or equaled, the fourth inquiry is whether the claimant can perform past relevant work. *Id*. § 416.920(e). If the claimant can engage in past relevant work, then no disability exists. *Id.* § 404.1520(e). If the claimant cannot perform past relevant work, the Commissioner has the burden to prove the fifth and final step by demonstrating that the claimant is able to perform other kinds of work. *Id.* § 404.1520(f). If the Commissioner cannot meet his or her burden, the claimant is entitled to disability benefits. *Id.* § 404.1520(a).

Plaintiff argues that the ALJ erred prior to or at step four of the sequential analysis by failing to provide clear and convincing reasons to support his finding that Plaintiff's complaints of severe pain and other symptoms and limitations were not credible, with respect to determining his residual functional capacity.

III.     **Analysis and Findings**

A.     **Whether the ALJ Erred in Rejecting Plaintiff's Credibility**

Plaintiff argues that the ALJ's decision should be reversed because he failed to provide specific, clear and convincing reasons for rejecting the credibility of Plaintiff's testimony regarding the severity of his pain or other symptoms. *Motion for Reversal* (ECF No. 15), pgs. 8-10. The Commissioner argues that the ALJ provided sufficient reasons to reject the credibility of Plaintiff's testimony and his decision should therefore be affirmed. *See Cross-Motion to Affirm* (ECF No. 21).

If the claimant has presented sufficient evidence of an underlying physical or mental impairment that could reasonably cause his symptoms, then, in the absence of evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the credibility of the claimant's testimony regarding the severity of his pain or other symptoms. *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 1991) (en banc); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984)).[1] The ALJ must state the reasons why the testimony is unpersuasive, and must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (2009) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)).

The ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain. The rationale for this restriction is that pain testimony may establish greater limitations than can medical evidence alone. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citing SSR 96–7p (1996)). In determining credibility, the ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony. *Id.* (citing *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001)). The ALJ may also consider factors such as (1) the nature, location, onset, duration, frequency, radiation, and intensity of any pain; (2) precipitating and aggravating factors (e.g., movement, activity, environmental conditions); (3) type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities. *Id.* (quoting *Bunnell*, 947 F.2d at 346)). As these factors indicate, medical records can provide relevant information that impeaches the credibility of Plaintiff's testimony. For example, medical records indicating that a claimant denied pain or reported only mild pain in a particular body part, may properly be used to discount his later claims of severe pain in that body part.

---

[1] Although the Commissioner disputes the correctness of this standard, she recognizes that the Court is bound by it. *Cross-Motion to Affirm* (ECF No. 21), pg. 5.

14

In this case, the ALJ set forth several reasons for his credibility determination. First, the ALJ considered Plaintiff's lack of substantial medical treatment. *See* 20 C.F.R. § 404.1529(c)(3)(iv), (v); *See also Molina*, 674 F.3d at 1113 (*quoting Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)) ("[a]n ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'"). Plaintiff was initially found disabled in 2005 because of his mental limitations. Specifically, Plaintiff was unable to interact appropriately with supervisors and co-workers. AR 312. According to Plaintiff, he remained depressed since that time and his condition had not improved. The ALJ stated, however, that Plaintiff did not obtain any mental health treatment for his depression and other psychological symptoms. This lack of treatment was "surprising" to Dr. Yao, who noted the availability of such treatment through Medicaid. *See* AR 1157.

The ALJ also considered Plaintiff's activities of daily living. *See* Social Security Ruling 96-7p ("[T]he adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: 1. The individual's daily activities... "). The ALJ explained that Plaintiff's ability to care for his daughter undermined the credibility of his alleged symptoms by suggesting "a much higher level of functioning that he [was] admitting to." AR 23. Plaintiff concedes that the ALJ may appropriately consider his activities of daily living but argues that the ALJ failed to explain how his routine activities translate into the ability to work on a full-time, competitive basis. *Reply to Motion for Reversal* (ECF No. 22), pg. 5. The ALJ is not required to explain how each of Plaintiff's activities translates into an equivalent activity performed at a full-time job. It is enough for the ALJ to find that the activities Plaintiff admits to performing on a daily basis could be transferred to the workplace. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989); *see also Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir.1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work). Plaintiff admitted to caring for his daughter every day and also reported to Dr. Yao that he was capable of doing chores, including dishes, laundry and picking-up around the house. AR 1156. While these activities, alone, may not necessarily demonstrate an ability to perform work, they are relevant factors and, together with other evidence, may support a finding that Plaintiff's complaints of severe pain or other symptoms are not credible.

15

Finally, the ALJ based his credibility determination on Plaintiff's work history. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (An ALJ may consider the claimant's work record). The ALJ specifically found that Plaintiff's history of short-term jobs with multiple employers suggested a marginal connection to the work force, which gave Plaintiff little incentive to return to work. AR 23. Plaintiff concedes that this was a proper observation, but argues that it cannot be the sole basis for discrediting his testimony. *Reply* (ECF No. 22), pg. 6. As discussed above, however, Plaintiff's prior work history was not the sole basis for the ALJ's credibility determination. Plaintiff's lack of formal mental health treatment, as well as his activities of daily living, also contributed to the ALJ's decision that Plaintiff was not credible.

## CONCLUSION

The ALJ properly set forth clear and convincing reasons for rejecting the credibility of Plaintiff's testimony regarding the severity of his pain and other symptoms. The ALJ's credibility determination was based on Plaintiff's failure to obtain formal mental health treatment, his activities of daily living, and his prior work history, in connection with the objective medical evidence in the record as a whole. The ALJ's finding that, as of June 1, 2011, Plaintiff was capable of performing his past work as a short order cook, or perform other work available in the national economy was supported by substantial evidence in the record. Accordingly,

## ORDER

**IT IS ORDERED** that Plaintiff's Motion for Reversal and Remand (#15) is **denied**, and that the Defendant's Cross Motion to Affirm (#21) is **granted**. The Clerk shall enter judgment accordingly and close the case.

DATED this 31st day of July, 2017.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge